panelist by Brett Zeeb. Mr. Zeeb. Good afternoon, your honors, counsel. I'm here for the court. Your honor, here is what defense counsel knew when he recommended that his client, Jimmy Weaver, take an open guilty plea to an attempt murder charge in this case, a crime that requires a specific intent. First, he knew that his client told witnesses right after the incident that he had killed a demon in his basement. He also knew that Weaver suffered from nyctophobia, which is an irrational, severe fear of the dark. He also knew that Weaver did not remember all of the events that occurred on the night of the offense. He also knew that Weaver was an alcohol, steroid, and drug user. And then finally, and critically, he also knew that he had an incomplete knowledge of his client's mental state at the time of the offense. Attempt murder requires a specific mental state, and he did not know what his client's mental state was. And it's that incomplete picture of Mr. Weaver's mental state which produced an obligation for him to dig a little deeper in this case, to ask the trial court to order a mental examination for his client, to look for medical records that might shed some light on what his mental state was at the time of the offense. Instead, as your honors know, counsel didn't do that, and that's why we're here. If counsel had done that, we'd have more information. We'd have a complete, or at least more of a complete picture and an idea of what exactly happened in that basement. This is a bizarre crime. Mr. Weaver, as the record indicates, certainly wasn't an angel. He had previous domestic violence incidents. He was an alcohol user. But he hadn't done anything that rose to this level, where he essentially almost beat his friend to death in the basement after the lights went out. There's nothing that contradicts that version of events at this point. Right after the incident, his drinking buddies came to the door, and the two witnesses told the police right after the incident, Jimmy said that he killed a demon in the basement. The red flag should have been apparent for defense counsel at that point. There was no question that Mr. Weaver committed this act. Therefore, the only possible defense to this case would have been some sort of insanity defense or some sort of guilty but mentally ill plea, something. It's clear from the record, too, that counsel had some pause and so did the trial court in this case before they sentenced him and before they accepted his guilty plea. Counsel himself said, your honor, I just want the court to know that Mr. Weaver says there's some periods of time he doesn't remember. And then the trial judge, before he sentenced Mr. Weaver to the maximum term for attempt murder, he himself acknowledged that he was uncertain whether Mr. Weaver could even appreciate the criminality of his conduct. He didn't know whether Mr. Weaver knew at the point of the offense whether his actions would cause severe bodily harm. Now, the state argues that the record is incomplete. The state argues that, well, we don't know what this evaluation might show. And it's true we don't know. But we don't have to show beyond a reasonable doubt that this insanity defense would work. We've got to show that it was unreasonable for defense counsel not to do the minimum here and say, judge, my client says he thinks he killed a demon. He's got a fear of the dark. I think we should have him evaluated. I know that he went to a treatment center nine months before this offense to try to get help for anger issues and alcohol abuse. Maybe I can get those If it's possible that asking for this mental health examination and getting these mental health records could benefit this client, he has to do it. Does the court have any questions about this? Okay. Well, I'll address some other questions that the state brought up in their response brief then. They also argue that this is more an argument to be raised on post-conviction because there wasn't enough in the record. But for the reasons that I stated, there was plenty enough here to argue ineffective assistance. If we wouldn't be appeal. And it's also notable that Mr. Weaver got a maximum sentence here of 30 years, despite the judge acknowledging on the record that he wasn't sure whether Mr. Weaver, at the time of the offense, even knew that what he was doing was causing serious harm or would cause serious harm to his friend, Robin in this case, or at least his drinking buddy. We don't know the extent of their intoxication may explain it. It certainly does not excuse the type of behavior. I'm sorry to interrupt you, Your Honor, but that certainly is a component of it. There was the intoxication on it, but in the same breath, he also says that he's unsure, it's unclear as to whether he knew what he was doing at the time because of his mental issues. But we don't know what those mental issues are precisely because defense counsel didn't ask for his crime to be evaluated. And certainly, and again, we don't know. Alcohol, steroids, he's taken a whole host of things that we don't know what interaction that has with his fear of the dark. I know it sounds silly. Kids are afraid of the dark, but it is an actual phobia. His mother and stepfather testified at the sentencing hearing that he had this problem as a child all the way up until an adult that he would freak out when he would wake up and the lights would be out, screaming at the top of his lungs. And again, the facts of this case are bizarre. I mean, it's certainly plausible that this was the result of some psychotic rape that he suffered when the lights went out. And again, we don't have to show that this would be a slam-dunk defense at trial. We have to show that a plausible defense would result from requesting that he be evaluated and looking for some records. If the court doesn't have any questions, Mr. Weaver respectfully requests that this court reverse the trial court's decision and vacate his guilty plea and remain inattentive. Thank you. What kind of analysis would we go through to determine whether there was ineffective assistance from counsel? Thank you for asking that question, Your Honor. We'd have to show that counsel's performance was objectively unreasonable under the circumstances. And you're saying that's shown by the record? I think the record shows, based on the things that I mentioned in the argument here in my brief, that he knew that his client body-killed a demon. The witnesses told the police that right after the fact. He knew his client had a fear of the dark. He knew his client didn't remember everything. And then that led to an incomplete knowledge of his client's mental state at the guilty plea hearing. If I'm counsel and I'm going into a guilty plea hearing, I'm advising my client to plead to a specific intent crime, and I don't have a complete picture of what my client's mental state was, and I have this other evidence, I'm at the very least going to say, Judge, I want my client to be evaluated to find out. I want to give you some time to get some medical records. I know my client was at a treatment center or tried to get treatments at the Mississippi Center nine months before this. Let me explore that before my client pleads guilty to the specific intent crime. What about the second part of that analysis? Well, the second part of the analysis is we have to show that had counsel done those things that he should have done, whether it would result in a plausible defense, actual innocence or a plausible defense. And certainly it's plausible that as a result of the… these records would have given him a plausible defense. Well, let me backtrack. We have to show that there's a reasonable probability that had counsel done these things that Mr. Weaver would not have accepted that guilty plea and would have gone to trial, and then to show that, we've got to show that there would be a plausible defense that he could have raised. And had he gone to trial, he had been looking up 60 years, right? Well, if the state would have kept their brutal and heinous charge, yes, but it's our contention that a brutal and heinous conduct indicative of wanting to commit a cruelty is a very narrow universe of conduct. It requires knowledge and intent. And here, the trial court judge himself acknowledged that he didn't know. He had questions about what the defendant's state of mind was at the time of the offense. So I think it would be a real stretch for a trial to conclude under these facts that we have that his actions were brutal and heinous. Was the trial judge accepted the plea even though he had questions about the element of the crime? That's what the record indicates, Your Honor. I mean, I'm reading, I quoted the language at the sentencing hearing. I think you answered that, but one last question. Are you related to Kevin Z. Is Kevin in police forensics? Yes. I am distantly related to Kevin. I don't know him well, but I met him once at, you know, some family function years ago. Well, you know him, tell him I said hello. Any other questions, Your Honors? So you think it's objectively unreasonable he didn't ask for the mental evaluation? I think it's objectively unreasonable based on the, this is a unique set of facts. It's a unique offense. There's no way of getting around that. If there was nothing in the record that we had to point to that would indicate a possible mental health issue, then yeah, then the cases that the state cites, Gale, Cobb, Schultz, those all apply because then it's basically a fishing expedition based on nothing. This isn't Mr. Weaver just coming in after the fact and saying, you know what, I thought I killed a demon, so therefore I want to take my guilty plea back. This is what the witnesses told the police right after the offense. This is what Weaver told the witnesses when they knocked on his door right after the offense. So we have evidence to point to that would support this. Thank you, Judges. Good afternoon, Your Honors. May it please the Court, Counsel. Your Honors, my argument here will be fairly terse and it's going to be pretty redundant because I think the brief really set it out. This is a direct appeal. There are no post-conviction attachments here regarding the defendant's sanity where we could look into this. I suspect a PC may well be coming, but this isn't the proper form. What this appeal is based on is blatant speculation. We're bound by the record. The defendant relies, as he logically should, on that killing a demon statement. That's vague. It could just be speaking figuratively. It could just be bragging. The lawyer who represented this gentleman below talked about having four or five meetings with him discussing the case, plus other times in court. We are, again, bound by the record, not by speculation. The defendant feared the dark. He had incomplete memory. He was violent when intoxicated. Nothing in the record ties this to legal insanity. Nothing in the record reflects what the attorney did regarding investigating an insanity defense. We don't know what he did. It just isn't in the record. Insanity is rarely a successful defense. I'm not telling you anything you don't know. The law regarding ineffective assistance of counsel set forth in my brief. You referred to the proper, strict one standard, Your Honor. Parenthetically, the defendant is not really helped by the judge having said at the sentencing hearing it was, quote, unquote, uncertain whether the defendant could contemplate his actions would cause serious harm. He was going out of his way to consider mitigating evidence. The judge was extremely thorough in sentencing the defendant. He was just saying this because the defendant was so drunk. That's not insanity, and insanity is what we're discussing here, Your Honor. What I'm stating here now is a little bit of law. The case is cited or supported in my brief. Counsel is to make a reasonable investigation or make a reasonable decision, and investigation is not necessary. That's just boilerplate. We don't know what investigation counsel did or didn't do. We don't know if and how he decided. Perhaps an investigation was unnecessary. It can be reasonable judgment and effective assistance to decide to do an incomplete investigation regarding mental health. Again, the authority of that's in my brief. The prejudice prong of strict one is not met when the defendant does not show that further investigation would support an insanity defense. That's the Schultz case. Nothing in the record shows the basis for an insanity defense. I'm sounding like a broken record in that, but I'm going on what's in the record. No reported proceedings exist prior to the, it was December 6, 2010, guilty plea. There's nothing regarding anything concerning the defendant's possible insanity defense before then. Nothing shows what went on between the defendant and his attorney to leave the attorney not to seek a psychiatric examination and to leave the attorney not to further investigate the defendant's mental history. If indeed he didn't further investigate, we just don't know. The record from the motion to withdraw the plea does show, as I said, four to five meetings with the defendant, other times in court. Nothing therein led him to believe the defendant to be insane as he testified. Nothing in the record, nothing in the record indicates an exam would have found the defendant legally insane. Nothing in the record indicates that as a result of a mental disease or defect, I'm just stating the standard here, the defendant lacked substantial capacity to appreciate the criminality of his conduct. Nothing in the record indicates any particular mental disease or defect the defendant had except that fear of the dark. The defendant also threw in there that he felt he was addicted to alcohol, which he opined contributed to the offense. Again, I suppose alcohol had a good deal to do with this offense. That's not insanity. If he said this to his attorney, that may have been a big factor for the attorney not pressing more on the insanity defense. The brief record we do have from the guilty plea, the defendant told the police he was in a fight, that he was intoxicated, said he was partying and drinking with the victim, told the police he was in the basement. When the victim turned the lights off, the defendant was very afraid of the dark. The defendant snapped, punched the victim in the face, slammed his head into the floor. That's what came out of the guilty plea as to what he told the police. Later, he told his friend, Mr. Garza, he killed a demon in the basement. Again, as I said, easily construed as speaking figuratively or even bragging. Being a violent drunk arguably meant the attorney had to pursue an insanity defense. The other part of the record we have from the hearing on the motion to withdraw the guilty plea. The defendant said he told his counsel to fear the dark. He told his counsel he panicked when the lights went out. He told him there were periods of time he did not recall when the lights went out. He had not earlier told the police regarding his memory loss. Interesting. He pled guilty to avoid a higher sentence, as he said. The guilty plea here allowed him to take away from consideration the extended term sentence for the unduly brutal and heinous conduct. He said he and his attorney may have, his words, discussed the police reports. He elaborated on the occurrence, saying he was scared, felt trapped, thought someone was trying to kill him. He didn't know who he was beating until the lights came back on, told his attorney if the lights were on, he would not have done this. That's what he said then. The judge surely did not have to believe in ruling on that motion withdrawal plea. This new version, very different from the claim he earlier told the police of, in essence, a drunken fight. The defense attorney said he went over the police reports extensively with the defendant and saw nothing in meeting with the defendant to lead him to think the defendant was legally insane. His attorney said that. What little bit of record there is here supports us. Well, in a nutshell, what you're saying is that this would be better raised in a PC where the record can be developed? Is that what you're saying? That's part of what I'm saying, yes, Your Honor. I kind of start out saying in my briefing, this isn't a post-conviction petition. We're doing everything on the come here, speculating what might have been. Who knows? Maybe there will be no post-conviction petition because they'll consult the psychiatrist, say this guy was sober as a judge. That's not exactly the point, but he was absolutely, completely sane. We just don't know, but in any event, what I'm saying is we have a record to rely on. Post-conviction petition, of course, you do too, but it's a record that's been developed. Perhaps it makes it past the first stage because there are attachments in Affidavits 105. The defense lawyer nor did any other person regarding what investigation he did regarding an insanity defense. It just isn't in there. In the main cases the defendant relies on, and I won't go into them at great length, there was support in the record for an insanity defense. I tell you that at pages 8 and 9 of my brief. The judge below hardly abused his discretion in denying the motion to withdraw, claiming counsel is ineffective. It is our opinion, as I stated in the brief, the same result even under De Novo's standard, although the standard here is abuse of discretion. In this direct appeal, nothing in the record supports a reasonable probability. Get back to the Strickland standard for an insanity defense. There's no particular mental disease or defect here beyond the fear of the dark. Nothing to indicate a lack of capacity to understand the criminality of this conduct. It looks like from this record the defendant was a violent person, worse when drunk. No reasonable basis in this record for an insanity defense, ergo no ineffective assistance of counsel. As to the second issue, excessive sentence, my opponent didn't argue that. It's adequately covered in our briefs. I could state all the factors that went into the judge's lengthy opinion. I'll leave it at that. Any questions, Your Honor? Well, I'm just wondering if you aren't mischaracterizing counsel's argument a little bit. I don't think he's saying that there's enough in this record for an insanity defense, but there is enough in the record that would put his lawyer on notice that this guy's saying some pretty bizarre stuff, and in light of what we do know, a reasonable lawyer would have gone out and had this fellow examined. That's essentially what he's saying. That's correct. But, again, that can't be determined here because the lawyer says he met with him four or five times plus others, and nothing in what he said led him to believe an insanity defense should be presented. We've got the defendant's statements from the record that have been iterated and reiterated here, but we don't know everything that went on between the defendant and his lawyer. We don't know what else happened. Obviously, something happened. We don't judge what a reasonable lawyer is by what that lawyer, in this instance, thought or did in his life. A reasonable lawyer's standard is an amalgamation of what is reasonableness by attorneys, given the set of facts. Yes. So, what's a measure to determine that? The fact that he met with him a number of times with him means he met with him. He met with him. All the information we have here is, in essence, a fear of the dark, coupled with a criminal history of violence, several domestic batteries, and violence enhanced by drinking. In his statement to the cops, he was intoxicated, and that had a lot to do with it. I see every reason to picture a lawyer who's looking at clients as, ah, another drunken jerk who gets violent and really badly hurts somebody, not somebody insane just because we add in the factor of nyctophobia, fear of the dark. That completes my comment, Your Honor. Thank you very much. I was going to say, I hope you can still wear that tie proudly by the time of the November call. Yeah, that's, you know, ten points spread this weekend. I never ask a question of him. But, you know, it's because of your sadness. Your Honor, just from a policy standpoint, who do we want to determine the client's sanity? Do we want defense counsel to say, well, this guy's just a violent drunk, so I'm not going to bother to have him evaluated for his mental health, to figure out what his mental state was at the time of the offense? Or do we maybe want a trained psychiatrist to evaluate the defendant and submit a report to the judge so the judge can then determine, you know, so we can have a full knowledge of what the defendant's mental state was at the time of the offense? I think that the latter proposition makes a lot more sense for the system we have here. Well, and it would even seem that the State's representative here has at least suggested that it might not be too late to do that, and that there's another vehicle to get there. Well, Your Honor, correct me if I'm wrong, but there's not a provision in the Post-Conviction Act that would entitle Mr. Weaver to file a motion and get a mental health examination. He's going to have to, it's not easy getting medical records and getting a mental health exam regarding his sanity at the time of the offense while he's in prison. I mean, the record, there's enough on the record here to show that counsel was ineffective for not seeking this mental health exam for his client and not trying to get records that he knew would exist from nine months prior to this offense. And then also critical here is what we learned from the motion to vacate the plea was that defense counsel testified, well, yes, as counsel pointed out. I talked to the client, and nothing he said made me think he was insane, basically. He understood what I was saying. He could participate in his defense. But that's not the standard. That's whether he's fit for trial. The question here is whether he was insane at the time of the offense, whether he had the state of mind that had the intent to commit an attempt to murder here, whether he appreciated the criminality of his conduct. That's the question. So it's relevant whether when he spoke to Mr. Weaver months or a year after the offense and they were able to have a conversation, that that's justification for not asking for a mental health evaluation to discover his client's sanity at the time of the offense himself. This court has no other questions. So back to the difficulty in the post-conviction, you're saying we know the records exist from his treatment prior, correct? That's true, Your Honor. I mean, it's more so a failure to ask for a mental health evaluation. We don't know what those records are going to say when you went to the center nine months prior. There might be something there, but the critical point here is the failure to ask for the mental health evaluation because what is critical is what was his mental state at the time of the offense, and that's what a mental health evaluation with a trained psychiatrist would hopefully provide. And any lack of more evidence on the record here is attributable to defense counsel's failure to ask for this evaluation, but thankfully there is more on the record to show that defense counsel should at the very least have asked for this mental health evaluation. Both opposing counsel and I think Justice Smith asked this question, and maybe you can give me a little more full answer about why on a post-conviction petition a record couldn't be made, a better record. Perhaps a better record could be made, but still the end result is that we need to know what his mental state was at the time of the offense, and that's what a mental health evaluation would have given him. I don't think getting medical records from prior to this offense is as critical as the evaluation component. In a post-conviction proceeding, you're saying there's no way for them to get that evaluation. Well, perhaps there is a way, but it's considerably more difficult than this court acknowledging that counsel was ineffective for not doing that one thing when faced with an uncertainty regarding his client's mental state for all the reasons I've mentioned here and in the brief. With the PC, he's got pro se, he has to gather these medical records, assuming he can't afford a private counsel, he's going to have to file a PC, and the court's going to rule on it, and who knows what's going to happen next. Thank you. Thank you, Justice. We will be taking the matter under advisement, rendering a decision without undue delay, and for now we'll have a short recess for panel changes. Thank you. Is this your first appearance? First day of the recess. Okay, great.